# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK BRIDGES, | 1:10-CV-01266 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KATHLEEN ALLISON, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his conviction in San Bernardino County Superior Court in 1990 of second degree murder. He is serving a sentence of fifteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims Governor Arnold Schwarzenegger violated his due process rights in his January 30, 2009, decision reversing the California Board of Parole Hearings grant of parole. He argues the Governor's decision was not supported by some evidence.

---

[1] This information is taken from the pleadings and the state court documents attached to Respondent's answer, and are not subject to dispute.

1

Petitioner filed a habeas petition challenging the Governor's 2009 decision in the San Bernardino County Superior Court on April 28, 2009.  The petition was denied in a reasoned decision on August 18, 2009.  Petitioner next filed a habeas petition in the California Court of Appeal, Fourth Appellate District.  The appellate court denied the petition on October 28, 2009. Petitioner then filed a habeas petition in the California Supreme Court.  The petition was summarily denied on June 23, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on July 15, 2010. Respondent filed an answer to the petition on October 4, 2010.  Petitioner filed a traverse on December 6, 2010.

## STATEMENT OF FACTS[2]

On June 24, 1989, Montclair Police Department officers were dispatched to a convenience market at Ramona and Bandera Streets in regards to a shooting report.  In the course of their investigation and from witnesses they determined that a gang shooting had occurred which resulted in the death of 15-year-old Clyde Nathaniel Johnson, a member of the Montclair Crips gang.  Johnson had been near the convenience market with another 15-year-old male and several young men.  A witness told officers that a new red Nissan Sentra had driven up, which contained two black males recognized by several witnesses as Pomona Blood gang members.  At one point while the victim and his friend were crossing the parking lot, Petitioner, who was the passenger in the Sentra, called out to them.  He then drew a handgun and pointed it at them.  The victim's friend ran, but the victim was shot in the head and face and died. Witnesses stated that Petitioner had fired many times, and police later recovered 11 spent .45-caliber shell casings lying in the street and sidewalk.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

---

[2] This information is derived from the summary of the crime set forth in the parole board's decision.

1   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
2   enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries</u>
3   <u>v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th
4   Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>,
5   521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
6   The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its
7   provisions.
8         Petitioner is in custody of the California Department of Corrections and Rehabilitation
9   pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state
10  court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because
11  he meets the threshold requirement of being in custody pursuant to a state court judgment. <u>Sass</u>
12  <u>v. California Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v.</u>
13  <u>Lambert</u>, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a
14  habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the
15  petition is not challenging his underlying state court conviction.'").
16        The instant petition is reviewed under the provisions of the Antiterrorism and Effective
17  Death Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>,  538 U.S. 63,
18  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the
19  adjudication of the claim "resulted in a decision that was contrary to, or involved an
20  unreasonable application of, clearly established Federal law, as determined by the Supreme Court
21  of the United States" or "resulted in a decision that was based on an unreasonable determination
22  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
23  § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>Williams</u>, 529 U.S. at 413.
24      "[A] federal court may not issue the writ simply because the court concludes in its
25  independent judgment that the relevant state court decision applied clearly established federal
26  law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id</u>. at 411.
27  A federal habeas court making the "unreasonable application" inquiry should ask whether the
28  state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at

1  409.    Petitioner has the burden of establishing that the decision of the state court is contrary to
2  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
3  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
4  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
5  state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
6  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.    Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, 606 F.3d 1206 (9th Cir. 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). The Governor utilizes the same factors as the parole board and reviews the decision of the parole board de novo. Cal. Penal Code § 3041.2; In re

Lawrence, 44 Cal.4th 1181, 1204 (2008).  Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

>   (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
>   > (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>   > (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>   > (C) The victim was abused, defiled or mutilated during or after the offense.
>   > (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>   > (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
>   (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
>   (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'
>
>   (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
>   (5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.
>
>   (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

>   (1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
>   (2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.
>
>   (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
>   (4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.
>
>   (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

1    (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

2    (7) Age.  The prisoner's present age reduces the probability of recidivism.

3    (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

4

5    (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current

6

>dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

### A. State Court Decision

The superior court provided the last reasoned decision, rejecting Petitioner's challenges to the Governor's decision, as follows:

>Within the body of the Governor's decision, reference was made to Petitioner's previous convictions including selling controlled substances, trespassing, possession of drug paraphernalia and possession of a controlled substance. Petitioner also had disclosed during the course of his life term confinement, most specifically during a 2004 mental health evaluation, that he drank continuously from the age of 18 and had used cocaine and marijuana and had ingested PCP on at least one occasion. Petitioner also informed the evaluator that he had used crack cocaine daily from August of 1984 to December of 1986. The Governor also noted that the life crime was extremely dangerous in that the Petitioner had shot at least 11 times with a .45-caliber automatic handgun from a vehicle into a street area. It also appeared that the Governor was concerned that this was in retaliation for the victim's gang membership.
>
>As noted on the second page, the Governor articulated the various statements of alleged acceptance of responsibility by Petitioner. As the Governor noted, the Petitioner has made various statements over the years initially telling the Probation Officer after conviction that he was taking the rap for someone else and that he denied involvement in the shooting. Later, Petitioner told a mental health evaluator that he was stupid, rather than expressing remorse for the criminal activity. In 1998, Petitioner subsequently told another mental health worker that he thought the victim was reaching for a weapon and that an older 'ex-con' 'pumped him up' to have Petitioner retaliate. In 1998, Petitioner

told a correctional counselor that he was taking the rap for someone else and denied committing the murder. Finally, the Governor noted that in 2001 Petitioner told a correctional counselor that he was responsible for the life crime and provided a written account of what had occurred. Those identified factors are borne out by the record of the subsequent lifer hearing and appeared to be specifically articulable factors that the Governor considered. In the second to last paragraph, the Governor noted that those various statements with respect to the life crime suggest a lack of insight into the crime and that together with the lack of a parole plan that encompassed a job suggested to the Governor that Petitioner remains a risk.

At bench, the Court finds that it cannot re-weigh the evidence or come to a different conclusion from that of the Governor. In re Shaputis, (2008) 44 Cal.4th 1241.

. . . .

(See Resp't's Answer Ex. 2.)

The state court decision was not objectively unreasonable. First, the state court reasonably determined that some evidence supported the finding that the commitment offense was carried out in an especially heinous, atrocious or cruel manner. There was evidence that the motive for the crime was very trivial. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E). The only apparent motive was that the victim and his friends were members of a rival gang. There was also evidence that multiple victims were attacked. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A). Petitioner fired his weapon from a vehicle at least 11 times in the direction of the victim and the victim's friend. In light of the evidence, the state court determination that some evidence supported the Governor's finding that the crime was carried out in an especially heinous, atrocious or cruel manner was not unreasonable.

Second, the state court reasonably determined that there was some evidence supporting the Governor's finding that Petitioner's prior criminal history weighed against suitability. Cal. Code Regs., tit. 15, § 2402, subd. (c)(2). As noted by the Governor, Petitioner was arrested twice as a juvenile for burglary. As an adult he was convicted of selling a controlled substance, trespassing, possessing a controlled substance and possessing drug paraphernalia. In addition, he admitted he used cocaine, marijuana, and PCP. He also admitted that he and his crime partner were gang members and that he sold drugs to support his habit. Given these facts, the state court decision was not unreasonable.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone,

can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense and prior criminal history by themselves rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, the Board did not rely only on immutable factors such as the commitment offense and prior criminal history.

The Board specifically determined Petitioner posed a current risk of danger to the public based on his past and present attitude toward the crime. Cal. Code Regs., tit. 15, § 2402, subd. (b). Over the years, Petitioner's version of the commitment offense has varied greatly. Initially, he denied the crime and stated he was taking responsibility for someone else's actions. He expressed no remorse for the victim. Later, in an interview in 1993, he again expressed no remorse, this time stating the crime was "stupid." In 1996, his story changed and he admitted he was responsible for the shooting; however, he provided few details. In an interview in 1998, he stated he believed the victim was reaching for a weapon and that an "ex-con" had "pumped him up" to retaliate against the victims. However, Petitioner changed his story back to the original version and again denied his involvement stating he was "taking this rap for someone else." In 2001, his story changed yet again. This time Petitioner accepted responsibility for the murder and provided a detailed account of the circumstances of the offense. In light of Petitioner's various conflicting statements, many in which Petitioner denied any responsibility for the crime, the state court finding, that some evidence supported the Governor's determination that Petitioner's lack of insight and attitude toward the crime demonstrate he poses a risk of danger to the public if released, was not unreasonable. In re Shaputis, 44 Cal.4th 1241, 1260 (2008).

The Governor also found that Petitioner's lack of a job offer rendered him a risk to public safety. The Governor reasoned that Petitioner had never had stable employment, and having a means to support oneself is essential to success on parole. While this may be true, this is not a statutory factor indicating unsuitability. Moreover, Petitioner has achieved numerous vocations and skills. He has earned his General Equivalency Diploma. He has held numerous jobs in

prison. The lack of a job offer in light of Petitioner's abilities and work history cannot indicate unsuitability. Therefore, the state court's finding that some evidence supported the Governor's determination of unsuitability for parole based on the lack of a job offer was unreasonable.

The Governor considered numerous positive factors which would indicate suitability for parole. As previously stated, Petitioner was commended for his numerous vocational achievements. He was also commended for his participation in multiple self-help programs. He also received positive reviews from mental health professionals. Nevertheless, after considering the factors in favor of suitability, the Governor concluded that Petitioner remained a risk to public safety in light of the commitment offense, prior criminal history, his lack of insight and his mental attitude regarding the crime. The state court determination that some evidence supported the Governor's 2009 decision was not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **January 21, 2011**                          /s/ **Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE